## MILLER v. UNITED STATES.

Court of Appeals of District of Columbia.
Submitted April 5, 1927. Decided
May 2, 1927.

No. 4536.

1. Criminal law ☞1028—Basis of assignment of error must be laid in trial court.

In criminal as in civil cases, the basis of an assignment of error must be laid in the trial court.

2. Indictment and information ☞176—In prosecution for assault with intent to have carnal knowledge on particular date, admission of evidence tending to prove later date held not reversible error.

In prosecution charging defendant with assault on his daughter with intent to have carnal knowledge on or about July 3, it was not reversible error to admit evidence to prove offense on August 15, where only objection was that defendant would not be protected against subsequent prosecution, and no suggestion was made that defendant was not prepared to meet government's case with respect to such date.

3. Rape ☞43(2)—In prosecution for assault with intent to have carnal knowledge on particular date, testimony of examination of daughter made at considerably later date held not error.

In prosecution of defendant for having carnal knowledge of his daughter on or about July

3, admission of testimony of interne at hospital that on August 15 he examined defendant's daughter, and that there were no signs of violence at that particular time, *held* not error.

Appeal from Supreme Court of District of Columbia.

Benjamin Miller was convicted of assault with intent to have carnal knowledge, and he appeals. Affirmed.

M. Strasburger and B. Emerson, both of Washington, D. C., for appellant.

Peyton Gordon, J. W. Fihelly, and R. Neudecker, all of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. The appellant, Benjamin Miller, hereinafter referred to as the defendant, was convicted in the Supreme Court of the District of Columbia of an assault on his daughter, a child of 13 years, with intent carnally to know her, and sentenced to the penitentiary for 10 years.

In his opening statement to the jury the district attorney directed attention to the character of the charge in the indictment and to the allegation that the assault had been committed "on or about July 3, 1925," and stated that the evidence would show it was actually committed on the night of August 15, 1925. Thereupon counsel for the defendant interposed an objection to the offer of any proof "with respect to any date other than the date named in the indictment." This objection was overruled and exception noted.

Policeman Sheridan Jones then was called to the stand and testified, in substance, that on the night of August 15, 1925, he was patrolling his beat in the vicinity of Camp Meigs, in the northwest section of Washington; that at about 9 o'clock he saw an automobile coming down the east driveway with the lights on; that the car finally stopped behind a lumber shed in Camp Meigs, when he went over to investigate and discovered the parking lights of the car were not turned on. As he got abreast of the car he threw his flashlight on the occupants, and saw that Martha Miller, defendant's daughter, was on defendant's lap in such a position as to indicate that improper relations were being attempted. The child jumped up, got out of the car, and started to run up the roadway. Witness followed and overtook the child, to make sure of his identification. He then went back to the car and found the

defendant standing by it, in the act of closing the door and "adjusting his clothes." Conversation ensued, and defendant said: "Well, I will tell you; if you will let me go, I will never forget you." Thereupon witness placed the defendant under arrest.

Defendant was taken to No. 9 police precinct, and, in the presence of the desk clerk, "wagon man," and the men on reserve from other stations, admitted his guilt. Subsequently this admission was reduced to writing and signed by the defendant. About three-quarters of an hour later defendant was questioned in the captain's room, the child and her mother being present, together with several police officers and a representative of the Women's Bureau. The child also was questioned as to whether "the defendant was doing anything to her at all up there in the automobile, and replied, "Yes; but that he did not succeed because of the fact that a policeman came along before they had a chance to finish." Thereupon the child was asked whether defendant had ever attempted it before, and her answer was in the affirmative. After the child had given this answer, defendant said, "Oh, my God!" or something like that.

No objection was interposed to the introduction of this testimony as to other attempts. The written confession then was offered and received in evidence without objection.

On cross-examination of the witness Jones defendant's counsel asked: "Was the date of July 3 mentioned in any of these conversations which you say you had or at which you were present and when the defendant was present?" Witness replied that he thought he remembered something about July, but could not be positive.

Thereupon Thomas H. Parges, a senior at Georgetown Medical School and interne at Casualty and Emergency Hospitals, testified over objection and exception that he made an examination of Martha on the night of August 15th; that there were no signs of violence "at that particular time," but there were indications of violence at some time in the past. On cross-examination witness testified that the conditions to which he referred "could have been caused by a great number of things."

Several other witnesses gave testimony tending to corroborate that of Officer Jones, both as to the confession of the defendant and the statements made by the child Martha. During the introduction of this testimony, counsel for the defendant said, "May it please the court, this is on the same line of objection. The Court: You may have the same exception."

The government then rested and counsel for the defendant moved for a directed verdict on the ground that the indictment charged the commission of the offense on July 3d and "the evidence had been directed to an incident which took place on August 15, 1925." This motion was denied and exception noted.

For the defendant, two physicians testified concerning a physical examination they had made of the child Martha. They found no evidence of injury, but also stated that, while a physical examination usually would disclose whether improper relations had occurred between a man and a child, this would "not always" be the case.

Thereupon several witnesses testified as to the defendant's good character. Defendant then took the stand and, in the course of his testimony, admitted that he and his daughter were in the automobile on the night in question and that, when the police officer discovered them, she was sitting on his lap; that he (defendant) heard "somebody say, 'What are you doing there?' I said, 'What do you mean, what am I doing?' He said, 'You will get 20 years.' I said, 'If you can do it, do it.' My daughter heard the argument and she went out of the door, the officer running after her." Defendant denied that he had made any assault upon his daughter. He further stated that he could not read and did not know what he signed.

In his direct examination defendant had testified that he was a naturalized citizen and had lived in the United States about 15 years. During his cross-examination, the court inquired of him as to when he was naturalized. His reply was, "Maybe about 11 or 12 years." The court then inquired whether he was not asked, when he was naturalized, as to his ability to read and write, and he answered in the negative. The court also inquired whether he was not shown a newspaper at that time, and he replied, "Yes; I can read a newspaper." Witness then denied again that when naturalized he had been interrogated as to his ability to read. No objection was interposed to this examination by the court.

The child Martha then was called to the stand by the defendant and denied that any improper relations had occurred. She admitted, however, that she had made the statements testified to by Officer Jones and that she made the same statements to the grand jury, as well as "to Dr. Parges at the Hospital."

No objection or exception was taken to the charge of the court. Subsequently a motion for a new trial was filed, and it is apparent, from the written opinion of the trial justice denying it, that the ground of the motion was the failure of the court to restrict the government to the particular date alleged in the indictment. On this point the court said: "Defendant's counsel objected to evidence tending to show an assault on the 15th day of August, upon the ground that the government was confined by the indictment to evidence of an offense committed on the 3d day of July, but did not claim that they had been misled in any way as to what date the government's evidence would relate to, further than that, as a matter of law, they had a right to have the government restricted to evidence relating to the 3d day of July. And when the court indicated that it would admit evidence as to the occurrence of August 15th no suggestion was made that the defendant was not prepared to meet the government's case in respect to the 15th day of August, nor was any application made for a continuation of the case. No request was made before trial that the government should be required to state by way of a bill of particulars or otherwise what the actual date of the assault was."

[1] The rule in criminal as in civil cases is that a basis for an assignment of error must be laid in the trial court. Said the Supreme Court in Allis v. U. S., 155 U. S. 117, 122, 15 S. Ct. 36, 38, 39 L. Ed. 91 (a criminal case in which a judgment involving a sentence for a term of five years was affirmed): "A party must make every reasonable effort to secure from the trial court correct rulings or such at least as are satisfactory to him before he will be permitted to ask any review by the appellate tribunal, and to that end he must be distinct and specific in his objections and exceptions. Rule 4 of this court provides: 'The party excepting shall be required to state distinctly the several matters of law in such charge to which he excepts; and those matters of law, and those only, shall be inserted in the bill of exceptions and allowed by the court.' Repeated decisions have emphasized the necessity of a strict adherence to this rule."

In Crawford v. United States, 212 U. S. 183, 194, 29 S. Ct. 260, 264 (53 L. Ed. 465, 15 Ann. Cas. 392) the court said: "In criminal cases courts are not inclined to be as exacting, with reference to the specific character of the objection made, as in civil cases. They will, in the exercise of a sound discretion, sometimes notice error in the trial of a criminal case, although the question was not properly raised at the trial by objection and exception. Wiborg v. United States, 163 U. S. 632, 659 [16 S. Ct. 1127, 1197, 41 L. Ed. 289]." In the Crawford Case, the court, exercising its discretion, considered an objection general in character.

In Holmgren v. United States, 217 U. S. 509, 522, 30 S. Ct. 588, 591 (54 L. Ed. 861, 19 Ann. Cas. 778), it was ruled that an objection to the jury taking an indictment with indorsements of prior conviction thereon into the jury room came too late when made for the first time in a motion for a new trial. The court, after observing that in the exercise of its discretion such an error might be noticed, said: "But an examination of the record in this case does not satisfy us that we should exercise this right to review an error not properly reserved, and require the granting of a new trial, because of the indorsements upon the indictment sent to the jury, together with the forms of verdict. The record contains all the testimony, and it is ample to sustain the conviction of the defendant without giving weight to the effect of this indorsement."

In Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138, a capital case, a general objection had been reserved to certain portions of the charge of the trial court, and it was ruled that "as against a general exception the instructions given were correct."

[2] In the present case, the defendant was represented by capable and experienced counsel, who confined their objections below to the action of the court in permitting the government to prove a date other than that mentioned in the indictment, and to the testimony of the witness Parges. On the first point, the then theory of the defendant's counsel, as stated in the motion for a directed verdict, was that after conviction "there would be nothing to preclude the defendant from being again tried for the offense alleged to have been committed on August 15." In other words, the objection was purely technical, and it was properly overruled by the court. In Yeager v. United States, 16 App. D. C. 356, the defendant was charged on a certain date with carnally knowing a female child under the age of 16 years. The testimony tended to show that the first unlawful act committed by the defendant was 2 months prior to the date charged in the indictment, and that the offense was repeated until 2 weeks after the date mentioned in the indictment. This court sustained the conviction, saying: "The rule is well estab-

lished that, in criminal prosecutions generally, proof of any day before the finding of the indictment, and within the period of limitations, will be sufficient." To the same effect are Ledbetter v. United States, 170 U. S. 606, 18 S. Ct. 774, 42 L. Ed. 1162; State v. Willett, 78 Vt. 157, 62 A. 48; State v. Osborne, 39 Wash. 548, 81 P. 1096; Com. v. Robinson, 165 Mass. 426, 43 N. E. 121, and State v. Brownrigg, 87 Me. 500, 33 A. 11.

[3] As to the second point, the testimony of the interne, Parges, merely disclosed conditions found by him when he examined the child. The weight of his testimony was for the jury. In People v. Barney, 114 Cal. 554, 47 P. 41, the court sustained the competency of the testimony of a woman who had made a similar examination of a female child, saying: "Certainly it cannot be necessary that a witness should be a physician or a skilled physiologist in order to be competent to testify as to the existence or nonexistence of any part of the human body, when the matter can be determined by ocular inspection." See, also, State v. Symens, 138 Iowa, 113, 115 N. W. 878.

Although it now is urged that other alleged errors were committed during the progress of the trial and in the court's charge, for which no basis was laid during the trial, we are of the view that the circumstances of this case do not call for the exercise of our discretion to consider those errors. The record contains the direct testimony of the police officer who made the arrest, the testimony of several witnesses as to the oral confession of the defendant, the written confession and testimony as to its voluntary character, and the circumstances detailed by the defendant himself.

The judgment is affirmed.

Affirmed.